Good morning. If the clerk could call the case. 12-2014, People v. Cornelius Voss Counsel, who are going to argue, if you could approach. Let us know who you are and who you represent. I'm Benjamin Wimmer. I represent the defendant, Cornelius Voss. Assistant State's Attorney, Monique Patton, representing the people of the state of Illinois. All right. Welcome. We're going to give you, you know, 15, 20 minutes per side. Save some time for rebuttal. The microphones are for recording, not for amplification. May it please the Court. This Court should remand Mr. Voss' case to the trial court for an evidentiary hearing under Franks v. Delaware into whether the evidence presented against Mr. Voss at trial was obtained through perjury or reckless disregard for the truth. The police in this case obtained a search warrant for Mr. Voss' home and person based on the affidavit of a confidential informant who stated that he purchased marijuana from Mr. Voss in Mr. Voss' kitchen at some unspecified time on February 14, 2011. Prior to trial, Mr. Voss moved to quash the warrant and suppress evidence. In order to make the substantial preliminary showing required for an evidentiary hearing on his motion, he presented affidavits from every adult member of his home, accounting for when he was at home during the day and establishing, if the affidavits are true, that there were no visitors to the house other than residents of the house throughout the day. The other affidavits of the other adult residents don't say we were in Mr. Voss' presence whenever he was in the apartment. I don't know what the apartment is. It's got to be at least a two-bedroom apartment, right? You've got four adults living there? Based on the testimony at trial, yeah. There's mention of two bedrooms as well as the dining area, which sounds like the kitchen, and the front room. So if the roommates went into their room and your client's girlfriend was somewhere else, it's possible, isn't it, that the confidential informant came to the window like he said he did and made the purchase? If he were completely quiet or if the testimony was that the C.I. made the purchase at the door, as occurs in some of these cases where he says, I came to the door, he goes back into the apartment, comes back with the drugs, then that would make sense. The problem in this case for that interpretation is the full informant's story, which is that he comes in, there's a conversation in the front room about buying drugs, they go back into the kitchen. In there, there's a bunch of marijuana as well as two drugs on the table, and there's further conversation. The witnesses there in the house testify that they don't see marijuana on the table. I'm sorry, they affirm that they don't see marijuana on the table that day. And in addition, even if everybody in the house is off in another room in a bedroom, they're going to hear, hey, there's somebody else out here who's having a conversation with Mr. Voss. So, I mean, there's enough detail here to establish if these witnesses are telling the truth, the confidential informant's story couldn't have happened. Where is, what Franks is concerned with is misconduct by government actors in connection with applications for warrants. Where is, when the police officer verifies the details given to him by the confidential informant, where is the reckless disregard for the truth? All right. The potential here is basically that the officer, it's similar to Chambers, that the officer is recklessly pressuring somebody who he's... Where's that in the affidavit? It's not in the affidavit. The details show up in the confidential informant's affidavit. First of all, there's no indication here that Officer Papke has worked with this informant before. He has no history of reliable tips. Second, he's admitting things to this officer that clearly establish a criminal background. He says he recognizes that the guns that he says he sees in the Voss's kitchen are guns because he's used and shot them in the past. They've only been legal for, constitutionally legal potentially, for six months after the time of the McDonald decision by that point. But he did verify that somebody that goes by the name C.I. lived in that apartment. There were things that the officer did to verify the information from John Doe. He verified the house that the C.I. said that he went into and he verifies that the C.I. knows basically Voss's street name. That's enough to show that he knows who C.I. is. There's nothing in that the police officer does that specifically confirms, basically, the fact that he's ever been into this guy's apartment. There's nothing to verify that his knowledge of the interior layout of the apartment is correct. And there are steps that would be fairly easy to do if he wanted to independently confirm that. Namely, the C.I. says that he's bought every other day from Voss for the past three years. To be honest, according to the timing, he's due on the day that the conversation is going on. There's nothing affirmatively in the record that says it would have been difficult to just send him in there and see if he can come out with drugs. If he can, then you know for a fact that there's marijuana in there. Is there any requirement in the law that that's what a police officer has to do to get a warrant? Not when he produces the witness in front of a magistrate. This was actually handled in a case. I don't think that's specifically cited in the briefs, but it's People v. Smith from 2007. There's no need for an independent showing of an informant's reliability if he's willing to show up in front of a judge. It's similar to the identified informant, anonymous informant thing in the anonymous tip context. If you can identify who a person is, then the fact that they're exposing themselves to potential punishment is enough to get rid of any other lack of reliability and evidence of reliability for what the person is saying. So in this case, the mere fact that the witness was willing to show up in front of a judge and go under oath means that at least facially, you know, there's not enough here to move to cause the warrant on the grounds that, you know, there just wasn't a probable cause in front of the judge in the first place. So that then gets me back to the first question. Where is the reckless disregard for the truth in the police officer, which is what Franks is concerned about? It's exactly in the same way as Chambers. Now, again, going back to your case earlier, it's true. We don't have an actual affidavit from the confidential informant here. We don't even know who he is. Cases where you're going to be able to find out who the confidential informant is without the State simply revealing it or being forced to reveal it are extremely rare. But that is the scenario, basically, that's most likely and what this evidence is suggesting. We have a guy who has no history of working with Officer Papke before. Suggests it's quite possible he's just been picked up and is being pumped for information. Police officer, you know, we don't know precisely what it is he's saying to this guy to get him to talk. That's something for... That's a fishing expedition. That would say every time you have a confidential informant,  we're going to infer that there was some misconduct by the law enforcement person involved in pressuring him. Even without any showing to that effect. Well, no, we've got more here than you would necessarily have in another case. Say there's specific details here that potentially set this case apart from other ones. Namely, of course, the fact that there's no history of reliable tips here. There's a number of cases out there, including Tovar and Castro, which I think were incorrectly decided for other reasons. But at any rate, they're potentially distinguishable on this ground. In those cases, both officers said that the informant that they were relying on, it had a history of providing them with reliable information. Is the rule then that you're advocating that if the informant has no history with the applicant, there should be a presumption that there was some coercion involved? Isn't the question not the history? I mean, isn't it what the officer did to verify? Okay. There's two questions pending here. Excuse me. Be a multitasker for us. Yeah. In terms of the rule we're asking for here, I mean, it's very hard to set hard and fast rules in this context, simply because everything's so fact dependent. If we're in a situation, I mean, you just start piling on facts and then stipulating that there aren't additional facts. If there's no history of, you know, reliability from the informant, if the police officer doesn't do, you know, anything independently. Controlled by. Yeah. Controlled by something like that, something to, you know, specifically verify, you know, this guy's basis of information, I guess, on that side. If the guy doesn't have a history of reliable tips. I think in that situation, if you've got witnesses, you know, other than the defendant himself who are willing to, you know, go under oath and contradict the CI's story, I think that that's enough. To be honest, we actually even have more than that here in that, you know, the search, at least it's suggested by the evidence here, the informant's information was shown to be at least partially unreliable. According to his account, there's two guns in the kitchen, nobody gives testimony that any guns are found anywhere in the house. You know, not affirmative, but it's suggestive. Asking if the question is, you know, what the officer did to vet this person. I mean, that's definitely part of the question. There may be situations in which it wouldn't be reasonable to require an officer to additionally, you know, vet an undercover, not an undercover, excuse me, a confidential informant's story if, you know, again, potentially a person has a great history of reliable tips. Or there's, I don't know, I'm trying to think of something. That's the thing that most obviously comes to mind. I don't want to limit anything in this context because everything is so fact dependent. Here we're looking at abuse of discretion. Yes. That's a pretty tough issue for us to reverse. I mean, it's got to be pretty clear that there is no possibility here the judge got it right. Well, I mean, you know, abuse of discretion is a tough standard to meet, but it's not impossible to meet. The only case that I'm aware of, Chambers' case, they reversed. But other than that, I don't think there's any Illinois case where. Where they've reversed the denial of a Franks hearing. Right behind the Franks, yeah. To the best of my knowledge, that's correct. But, I mean, we can look for guidance into what sort of consideration should be by guiding a trial court judge to every case that was decided, including cases that are affirming the grant of a decision. It's not, you know, a hard and fast rule, but they definitely, you know, put up signposts as to what trial courts should be looking at. And here the trial court, you know, basically gave two reasons for concluding that there wasn't a substantial preliminary showing here. One was that, you know, the witnesses were, the Affians, excuse me, were interested parties and that they all lived in, you know, the Mr. Voss' house and knew him and potentially were on good terms with him. The trial court said that, you know, that's not going to be enough in every case. And, you know, again, that's been demonstrated by, you know, the case law in that, you know, affidavits from people who know the defendants have been shown to be sufficient for a substantial preliminary hearing in a number of cases. Chambers, Lucente, of course. In Lucente, it was that all the interested parties said they were someplace else, so it was impossible for the transaction to have happened the way the CI said it did. Here, all the interested parties are in the apartment. It's a I didn't do it type of affidavit. Isn't that different? I didn't do it affidavit, you know, as described in Lucente originally, is talking about, I mean, I think that we're actually imagining specifically a defendant who is just generally averring this didn't happen. And what they're trying to say with that is, you know, this isn't the post-conviction hearing act context. You can't just have, you know, a defendant show up, provide an affidavit, and you automatically get to, you know, go on to further potential discovery in a hearing. I think it also generally applies to just sort of, you know, any defendants providing, you know, an unverified by anybody other than myself, I didn't do it. I think it was the, yeah, the Phillips case defendant says, I was sleeping all day, therefore I couldn't have done it. Well, you know. I think, you know, you've done a great job of elucidating all of the factors from the various cases, but what my colleague is suggesting I think is the problem that you have, and that is in order for us to overturn it, we would have to say that no reasonable judge could ever come to this conclusion based upon the information presented to this judge. And I just, I'm not seeing it here. Well, I mean, in this situation, we've got, again, these, again, you know, these aren't sort of simple I didn't do it affidavits in the sense that they're coming from people other than the defendant and that they're specifically detailed enough that, you know, if they're true, you know, the CI story can't be true. If they're lying, then they're guilty of perjury. That's not enough. That's not substantial. I mean, that in itself doesn't seem, you know, you've got it so false that this officer was aware of something or just totally ignorant of something. Well, you know, it's not enough on its own, but, again, we have to go back to, you know, the details of the CI in Officer Papke's affidavit that suggests that this guy doesn't have a record of reliable information. He's not, Papke's not doing anything more than necessary to get this guy in front of the judge and get himself into the building. Yeah, but we do have, you know, the CI before the judge, judge being questioned. And, again, it goes back to the abuse of discretion standard. And in the chambers, you had that one additional factor right there with regard to the additional affidavit from the confidential informant. So that's what's missing here, isn't it? I mean, what's that extra? I mean, this seems, for us to, because of the abuse of discretion standard. Right. That is something that's, that is missing here. I mean, definitely this isn't as slam dunk a case as chambers was for that reason. But in terms of what the standard is for the trial court, we have to go back to Lucente here. Ultimately, you know, the trial court has to be guided by reasonability on this. We want a standard that's good enough to flush out what is described as spurious cases, but is something that's not going to be, you know, impossible to meet in a situation where there's, you know, reasonable probability that something untoward has happened. If the standard is going to be, unless you find the confidential informant and he admits perjuring himself under, you know, in an affidavit, I mean, that's basically never going to happen. What you've essentially done, if that is the standard, is you've managed to find a sort of classification of cases where Frank's challenges are effectively going to be impossible. Well, they are very rare. They are rare, but. All around the country. I mean, it's an extremely difficult case to make. And that's what the cases say. It's difficult, but, I mean, the standard is it shouldn't be impossible. And if you're carving out a specific sort of setting, giving the police a checklist of sort of basically here's everything you would have to do, regardless of, you know, what other factors may be present suggesting this guy's reliability or unreliability, all you have to do to insulate yourself from and after the fact Frank's challenge is get this guy to show up, put him under oath, and that's the end of it, you're creating, again, sort of the specter that was basically the driving force behind Frank's in the first place. The court, the Frank's court said what's really worrying people here is the possibility that a police officer is basically going to come in and lie specifically. But we have a judge there. The judge is listening to all this. The judge sees the individuals. We don't. We're not here to second guess. I mean, the judge sees the individuals in a case where the CI doesn't come in to testify as well. I mean, the mere observation. In this case, he did see it. He did see it. But, I mean, the point here is that the judge being able to observe somebody while he's testifying under oath, you know, isn't a guarantee, isn't the sort of reliability that, guarantee of reliability that an adversarial hearing is. I mean, the Frank's court specifically pointed that out when they were creating the rule. It's a reason for, you know, great deference to a fact finder when they're deciding between two versions of a story. But in a situation like this, the mere fact that, you know, the confidential informant is coming in and talking to the judge, I mean, it's enough to create, you know, a facial case of probable cause, even in the absence of any other, you know, background reliability. That's the Smith case. But it's not enough to create, you know, a reliable guarantee that a court's always going to be able to detect reckless disregard for the truth, such that you should take these cases completely out of the ambit of Frank's. You know, it's precisely because it's an ex-party hearing, the judge isn't necessarily going to be hearing, you know, details that suggest that there may be reckless disregard for the truth going on. He's hearing only what the police are coming in or bringing to the court to establish probable cause. I'll ask you to wrap up. Right. Basically, you know, under all of the circumstances in this case, we're dealing with an informant who has no history of reliability. The police don't do the bare minimum more than necessary to establish probable cause. We have affidavits from everybody Voss could reasonably expect to find establishing that he's, you know, that if these guys are telling the truth, the CI can't be telling the truth. And a part of the CI's story has already been disconfirmed. It's an abuse of discretion for the trial court to fail to hold a Frank's hearing in this case. Thank you. Thank you. Thank you. May it please the court. Again, Assistant State's Attorney Monique Padden representing the people of the state of Illinois. Prior to the U.S. Supreme Court's ruling in Franks v. Delaware, attacks on warrant affidavits were prohibited. However, the Supreme Court in Franks ultimately noted that a complete ban on veracity challenges violated the Fourth Amendment. But several considerations call for a very limited exception. In Franks, the defendant in that case sought to challenge the warrant affidavit. And in support of his claim, stated that two of the named informants would testify that they never spoke to the officer seeking the warrant and that while they did speak to other officers, what they told those officers was somewhat different than what was stated in the affidavit. So Franks specifically carved out a very limited exception for the express purpose of deterring governmental misconduct and preventing deliberate misrepresentation on the part of officer affidavits who were seeking warrants. The court then. Where was the, remind me, the government misconduct in Lucente? You had a C.I. who said he bought from Lucente at his home. Lucente brings in three, his own and two other affidavits to say we were all at our sister's house for the entire evening and so the buy could not have occurred. Where was the government misconduct there? Well, Lucente is different in the sense that the confidential informant was not presented before the judge. So the evidentiary hearing was granted to determine this. And even more, even though Lucente ultimately granted the evidentiary hearing, it also set forth this heightened abuse of discretion standard, which your honors have noted, that even though a court may look to a similar set of facts and find that an evidentiary hearing was granted, does not mean that the reviewing court should find that an evidentiary hearing is granted in all similar cases. The determination as to whether a Franks hearing is warranted is extremely subjective. And because of that, there will be cases where a hearing is granted where no one was warranted or in the opposite, that a hearing is not granted where one was warranted. But in Franks, if we look to the considerations that the Supreme Court set forth in limiting this exception, the Franks court specifically accepted that that may be a reality of setting forth this rule. It noted that one of the considerations is that reviewing courts should be careful not to interfere with criminal convictions for the sole purpose of deterring governmental misconduct because that may be too great of a burden to place upon our society. So even if a separate court would have found that a case factually similar to Lucente was granted a hearing in Lucente, that does not mean that another case should reach the same result. The appropriate standard for determining when a Franks hearing is warranted was set forth by the Sixth Division of this court in the People v. Gorosciata in 2007. The people acknowledge that after Gorosciata, few courts have followed the rules set forth in that case. But that is because People v. Carroll and those cases that relied on Carroll's reasoning all misinterpret Franks. Carroll provides that following the rules set forth in Gorosciata defeats the purpose of Franks because it makes it so impossible for defendants to challenge warrant affidavits. But that's not what Gorosciata does. It best serves the purpose of Franks, which was to deter governmental misconduct. But doesn't Chambers illustrate why you can't have a black-and-white rule like that, that if the confidential informant appears before the issuing judge, it takes it out of Franks as a matter of law? Chambers illustrates why you can't have that rule. No, Your Honor. Actually, Chambers illustrates what the Supreme Court was willing to accept in Franks, going back to my original point, that this may happen where an evidentiary hearing is not granted, but we later find out that it may have been warranted. This is a casualty of setting forth this very limited rule. So you would say the State would take the position that Chambers, at the appellate level, was wrongly decided? Yes, Your Honor. Because, again, the Supreme Court and the U.S. Supreme Court and the Illinois Supreme Court have set forth that this may be the case sometimes, but it is too great of a burden to place on our society and our system to provide that just because we find out later that a hearing may have been warranted, that the trial court was wrong. At the end of all of this, the defendant is seeking suppression of evidence. Lucente noted, however, that even if the evidence is not suppressed, he is still tried on the truth of the case. So this suppression of this evidence is not always dispositive of the matter. It's basically a preliminary matter. And the U.S. Supreme Court noted, again, for limiting this exception, that reviewing courts should be careful not to conflate the ultimate issue of defendant's guilt or innocence with the collateral issue of whether or not there was governmental misconduct. So what do you make of Mr. Wimmer's point that we have a confidential informant with no history with Officer Papke, at least not in the application, and because he says he goes to that apartment every other day, it would have been easy for Officer Papke to send him in there and do a controlled buy. Your Honor, this is the precise reason why the John Doar informant was presented before the issuing judge. The burden, once Officer Papke presented the John Doar informant before the issuing judge, the burden of determining whether or not the informant was reliable shifted from Officer Papke to the court. And in France, another consideration for creating this limited rule was that issuing judges are adequately equipped to conduct vigorous inquiries on the front end. So if the court had questions on why the Officer Papke did not engage in certain actions to corroborate what the John Doar informant told him, then that was for the issuing judge to determine or question the officer and the John Doar informant on. Whichever rule this court propounds, the defendant fails on either one. Because the John Doar informant was presented to the issuing judge, the people maintain that presenting the John Doar informant removed this case from the ambit of Franks. But even if we look at this substantial preliminary showing that opposing counsel sets forth, these affidavits do not meet that standard. First of all, the affidavits fail to even meet the threshold purpose of Franks. They make no specific allegations that Officer Papke knowingly, intentionally, or with reckless disregard for the truth included these allegedly false statements in the affidavit. At the most, and the affidavits don't even do this, but at the most, they may show that the informant was lying. That is not with Franks. But this is Chambers' case where they have an affidavit showing that the officer was coercing the defendant. Yes, Your Honor. But again, Chambers sets forth that very example where the evidentiary hearing was not granted, but later we found out that it was warranted. That will happen. But according to Lucente, in Franks itself, that is okay. We are willing to accept that because this rule is specifically designed, and this is very narrow. Franks was never created to open the door for any attack based on unsubstantiated and blanket denials of selling drugs to John Doe informants. It was never created for that purpose. It is a very specific and narrow path, and it is rare that Franks will apply. This is not the case where it applies. If we look at the affidavits in the present case, the defendant sets forth a number of the places he visited that day. But he still maintains that he was at home for at least 8 to 10 hours of that day. And while he was there, he claims that this drug deal did not occur. But if we looked at Peeble v. Castro, Peeble v. Chovar, and Peeble v. Pavon, all first district cases, those cases hold that these affidavits from defendant and his family members are not sufficient to meet the substantial preliminary showing standard. They're not sufficient. It just says that you give them less weight. Correct, Your Honor. They give them less weight. Absolutely. They give them less weight. And under Lucente, it's still reasonable for a court to find that that's not enough to meet that standard. And the affidavits in this case, in addition to failing to make a specific allegation of deliberate falsehood on the part of Officer Papke, they also fail to preclude that any drug deal occurred that day. There are about 8 to 10 hours where he is at home. And assuming that Mr. Patterson and Ms. Patterson and Mr. McDonough were in the apartment at the times that defendant was there, that does not mean that he did not conduct a drug transaction. The transaction occurred in the kitchen. It started in the living room and it went to the kitchen. We don't know if Ms. Patterson and Mr. McDonough were in the room when it happened. And for all we know, they could also be lying. These affidavits fail to show the defendant did not sell drugs to the John Doe informant on that day. Also, it was the defendant's burden to establish that he did not engage in this transaction. But he offered nothing in the way of supporting these affidavits. He has no bank receipts, no receipts, no bank statements, no logs, no ticket stubs, nothing showing that he went to these places on that day. And while in his brief opposing counsel asserts that people may not keep receipts for these small purchases, anything to show that he was telling the truth would have been helpful. And nowhere are the people setting forth a discourse or set forth a bright line rule that you have to present X amount of evidence to meet the standard. But there's nothing here other than these self-serving and potentially biased affidavits. Yeah, but even if he had a receipt or two, you would be arguing, well, that only shows that he was there at that time and we don't know what time the drug transaction took place. So it's kind of meaningless. Absolutely, Your Honor. But again, it's still the defendant's burden. And these affidavits standing alone, according to three cases from this district, they're not enough. Or at least they warrant the court being reasonable in finding that an evidentiary hearing was not warranted. You're saying they're nothing more than, I didn't do it, affidavits, basically. Yes, Your Honor. These affidavits don't preclude this possibility that this drug transaction occurred. And if we follow the precedent set forth in this district, this Court should affirm the trial court's ruling in holding that no evidentiary hearing was warranted. But you say that the rule is then that the affidavits have to show impossibility? They do not have to show impossibility, Your Honor. But they should preclude some possibility that the drug transaction did not occur. And these affidavits don't do that. And even if... All the people there say, you know, we were around and we didn't hear anything, we didn't see anything. They do, Your Honor. But even if this Court finds that, upon its own reasoning, that it would have come to a different conclusion, Lucente provides that as long as the trial court exercises discretion within permissible limits, the reviewing court should not disturb that decision. Lucente even went so far as to say that once the trial court makes a determination on whether or not an evidentiary hearing was granted, that decision will be final to some degree. And this is the case that presents why. These affidavits are not sufficient. And the trial court was reasonable in making that determination. For those reasons and for the reasons set forth in the People's Brief, we ask that you affirm the trial court. Thank you. Thank you. Two things. First, I wanted to briefly address this logic from Goro Steada that the burden for evaluating the reliability of the informant shifts from a police officer to the judge when the informant is to produce. Obviously, producing the informant in front of a judge has some effect. That's the Smith case. If they're willing to subject themselves to potential perjury punishments, it provides some additional reliability. But it's not as though there's some sort of shift of who's the decision maker. The decision is always with the judge. It's the judge's job to decide whether or not there's probable cause sufficient to issue a warrant. Again, the important thing here is not the opportunity to look at the witness's face necessarily when asking questions. It was specifically said in Smith, it doesn't matter for purposes of whether or not the witness showing up helps establish reliability whether he was actually asked questions. What's important is demonstrating that he was willing to potentially expose himself to them and to a perjury punishment. So, again... But wouldn't it, in the same vein, wouldn't it have been obvious to the issuing judge that this was an informant that didn't have any background? Officer Patgate. So when the issuing judge understood that this informant came out of nowhere, he didn't have a history of reliability, obviously in determining whether probable cause existed, the judge took that into account. So how can we second guess on that basis and say, well, you should have done a controlled buy? That would have been better. Well, there's a couple of things. First of all, the police officer has some clues at that point, but he doesn't have all of them. For instance, when the search eventually goes off, it turns out that the information in there isn't entirely good. There's a lot of marijuana in the house, but it's not in the kitchen, which is where he says he saw it, and the guns are missing. Secondly, you know, again, the officer doesn't necessarily, you know, even if the judge asked the officer, did you pressure this guy too much, what's the officer going to say? You know, no. You know, we just had a conversation. That's why it's essential to be able to look at the entirety of the circumstances, as well as the affidavits that are being presented by the defendant, after the fact. And just one more brief factual detail about, you know, the absence of, you know, tickets, stubs, receipts, something after the fact. You know, as pointed out in the briefs, you know, obviously these are the sorts of things that people don't normally, you know, keep around, at least when they don't have a reason to believe that they're going to have to do it. I just want to draw attention to one additional thing, which is just obvious from the timeline, but wasn't talked about at length in the brief. He doesn't know at the time of his arrest that Valentine's Day is important. He doesn't find that out until, you know, discovery produces, you know, the application for the warrant. The earliest that could have happened is, you know, once the state files its earliest answer to discovery and begins producing documents to the defense. That's at least two months later. By that point, the flowers have wilted. The helium has gone out of the balloon. If that's the trial court's reason for getting rid of, for not holding a hearing in this case, I would have given it to you, but you just didn't have the receipts. That just doesn't make sense. That is an abuse of discretion. Unless the Court has any further questions, I would urge this Court to remain for a frank hearing. Thank you. Thanks for the briefs and the argument, both done at an excellent level, really well done by both sides. We'll take the matter under advisement and be back to you with an opinion shortly. Thank you.